**BRIEF TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

**IN THE CASE OF ABDUR-RAHIM DIB DUDAR V. STATE FARM**

**CASE NO. 23-12788-B**

### THEORY

The Forest Park Code Enforcement, Forest Park Fire Department, and Georgia Power acted properly and judicially to protect the citizens on October 19, 2018, by cutting the Electric Supply Line to the property at 1122 Elaine Dive, Forest Park, Georgia. They saw a plate with two bare hot wires sitting on the plate under the sink with the tubs of the sink full of grease and water overflowing the tubs conducting electric shocks.

Whoever did it must have turned off the Circuit Breaker to unwrap the bare wires, curl it up to sit it on the plate, then to turn on the Circuit Breaker to receive the overflowing of water and grease from the sink. This is a deadly crime. And it is a catastrophe to the owner.

The owner bought Security against these catastrophic events from State Farm Fire and Casualty Insurance Company. Instead of relieving the owner from the catastrophe, State Farm Fire and Casualty Company ignored the catastrophe and through fake negotiations and fallacious investigations followed by a legal process over-extended this catastrophe by imposing more insurance catastrophe against the insured to enrich State Farm Fire and Casualty Company at the expense of the insured and intimidate the insured from ever challenging their greed and negligence, by committing crimes of perjury, forgery and identity theft against the insured. They have attorneys from Swift & Currie to secure them from being held accountable for their crimes through legal maneuvers for coverup. Swift & Currie does not have to worry; they know the law to evade consequences.

The United States District Court and the United States Attorney General stated they have no Jurisdiction on State Farm Fire and Casualty Company and their attorneys at Swift & Currie.

State Farm Fire and Casualty Company used its adjudicational power to impose on Appellant additional catastrophe, much bigger than the one he suffered from and never ended yet. All for exploitation by intimidation. The Insurer sold Security to the Insured. Instead of relief in the time of the catastrophe, the Insurer imposed additional catastrophe on the Insured of higher magnitude even through committing regular common street crimes of perjury, identity theft and forgery.

*(Why have the Wolves gone wild? Because the Rangers are absent.)*

### BACKGROUND

*Appellant's Brief*

1

On September 17, 2018, Appellant rented the home at 1122 Elaine Drive, Forest Park, Georgia (Property) to Cokethia Goodman Lowe (Cokethia), a mother with six children for $1000/month. Cokethia in turn rented part of the Property to four more adults including Ms. Goodman (Plumber), a Plumber by profession. Cokethia was allowed to paint the rooms in the colors of her choice at her cost.

By the way, the previous tenant had a last name "Lowe", and she was evicted after tampering with the Dishwasher's little faucet below the kitchen sink (Sink), flood the kitchen with water and call the Code Enforcement Officer, Ken Fleming (Fleming) to complain there was a leak in the kitchen. Her male partner would send Appellant threatening text messages after eviction, which were referred to Chamble Police. Chamblee Police took the proper action and these messages stopped.

On October 1, 2018, Appellant visited the Property and saw how beautiful it looked after the new paint job. Cokethia and her company in the living room seemed very happy to be there. For some reason the Plumber interrupted Appellant's conversation with Cokethia saying,"$1000/month is too much for this property." She was not on the lease and Appellant ignored the statement. But Cokethia gave Appellant a copy of "ATLANTA OCT 5, 2018,VOICE" about Cokethia's horror in "Renting in Atlanta" after being evicted from previous rental.

On October 14, 2018, Cokethia called Appellant to complain that the commode in the finished basement was leaking and an outlet nearby burnt. A burnt outlet is a serious problem, a danger to the people. Appellant, who was trained as an engineer before getting a doctorate in Mathematics, immediately drove to the Property and repaired the issues and Cokethia's daughter asked Appellant to check the repair job before leaving. Meanwhile, Appellant told Cokethia that perhaps the Plumber who was staying in the Finished Basement, might have sat on the commode and twisted her body to dislocate the holding bolt in the tank over the commode. The young lady checked. Everything is O.K.

But these issues did not exist even when the previous Lowe lived there, and Fleming investigated. The Appellant called State Farm to immortalize this incident. So, State Farm sent Ken Simmons (Simmons) to investigate. Simmons looked to see where the outlet was burnt and where the water leaked on October 15, 2018. He was disappointed there was no claim; it was not to be a claim he was told.

He came back the next day, October 16, 2018, for the Water Leak which he saw the day before and Cokethia added a clogged Sink. Neither leak nor Sink made a Leak Claim; he was unhappy there were no claims, and his presence was not to be a witness for vandalism. But he became a witness regardless and turned out to be a malicious witness, like a dog pulled to move and refuses to do so. The Appellant bought the tenant two bottles of Liquid Drano from the Dollar Tree Store almost next door and gave it to Cokethia. That was on October 16, 2018. Otherwise, the house was nice and clean and the people there were happy.

On October 19, 2018, Fleming called the Appellant to come to the Property. The Appellant was able to meet Fleming at about 4:30 P.M. to inspect the Property when the Fire Department and Code Enforcement and Police and Georgia Power were around. Fleming showed Appellant the Fancy Light Fixture in the Living Room with bare wire connections, the filthy Sink flooded with water and grease, and the "Plate with Spliced Bare Wires" below the Sink, saying "The Fireman put his finger in the tub, and he got an electric shock." Then he showed Appellant some water in the Family Room in the basement next to Plumber's room and said, " The tank over the commode was leaking the water." Then he told the Appellant two Notices of No Habitation have been placed on the Front door and Lower door

2

until the Property is rewired and the plumbing repaired. On his way out, he heard Georgia Power cut the Electric Supply Line to the house and saw the man rolling it as a coil to the side of the Property. This was followed by turning the water off to the Property.

The Property was habitable all along until October 19, 2018. Cokethia (Tenant) is responsible for this damage. This damage is an act of vandalism, and the Tenant must be evicted. It was after five and the Court was closed until Monday, October 22, 2018.

On Monday, October 22, 2018, Appellant filed a Dispossessory on "Malicious Destruction of Property" and Violation of Code of Occupancy by subletting the premises to four more adults according to Fleming. This was answered by Tenant with a Counterclaim of over Ten thousand dollars under "Constructive Eviction" stemming from Water Leak and Faulty Electric Wiring in a house in Disrepair.

The Appellant filed a damage claim on vandalism with State Farm on October 22, 2018. State Farm did not come to investigate this time. It was Silent.

When the Appellant received a Notice and a Copy of the Counterclaim, the Appellant called State Farm to defend him against Liability to Colethia. State Farm refused to appoint a counsel to defend him against Liability knowing that Liability to Others is insured by State Farm in two policies with State Farm, Rental Policy, and Umbrella Policy. State Farm refused to Defend Appellant against Liability. State Farm remained Silent, again.

On November 12, 2018, a Full-Scale Bench Trial was held on the Dispossessory, Claim and Counterclaim. The Tenant was represented by an attorney (white), the Judge (Black), the Adjuster (Black), the paper (Brown), VOICE (Black), Appellant (other). In a highly charged trial, you would think the Black judge will side by the Black Tenant who was displayed in the VOICE, picture of her and children praying from the "Rental Horror" in its October 5, 2018, issue. Yet the Judge concluded Tenant was lying under oath and Tenant was responsible as she contributed to the Water and Electric Damage to the Property. The Judge dismissed her Counterclaim. Because the Appellant did not show Invoices of Payment to fix the damage, the Judge dismissed his Claim. The Judge gave Tenant until November 20, 2018, to file an appeal and he did not ask the Appellant to file an appeal of dismissal. After the Trial and after Tenant and Attorney left, before leaving the Courtroom, the Appellant congratulated the Judge publicly on the fair Trial. He walked out and the Judge kept doing his business, he did not even seem to have heard him.

On Friday, November 16, 2018, the Tenant was given a Police Voice Notice to pick all her packed things and never to come back after November 17, 2018. Yet, when the Appellant visited the Property on November 20, 2018, the Property was destroyed. The Forest Park Police were called to the scene, and the Policeman told the Appellant he will find the perpetrators and get them arrested. He was not allowed to take fingerprints and there were no witnesses.

The Appellant filed another Claim with State Farm on November 20, 2018. But this time, State Farm responded with Simmons coming to investigate and evaluate and issue checks for the damage.

**State Farm broke its silence this time around. But State Farm stayed silent on the claim of 10/19/2018. So, when a check was issued due to 11/20/2018, Appellant rejected the money citing continued vandalism. State Farm sent a second crew to investigate under Bryan Van Camp (Camp).**

3

Camp filed his report on **January 11, 2019,** over three months after **October 19, 2018**. The Property began to look shabby, no water, no heat, no light, under the elements.

Camp told Appellant, " Just a finger shock to rewire the house?" He did not say he saw the Plate with the Bare Hot wires on it. He did not see the fancy light with the exposed wiring, unrooted from the ceiling by 11/17/2018. He did not see the house before 10/19/2018 (only Simmons saw it) and did not see the house before 11/17/2018 (the Policewoman saw it). He saw the house after it had sat for three months without water, heat, and lights. The elements have been working on it since October 19, 2018.

Camp added a few hundred dollars to the Claim filed on November 20, 2018. **Again, when the checks came, the Appellant returned them to State Farm. The checks did not account for 10/19/2018.**

State Farm appointed a **third Crew**. This crew told Appellant they came to help him. The young lady (Robbie) in charge, did not mail a report to Appellant. When Appellant called her to find out what happened, she told him about the damages of 11/20/2018. When she came to talk about the damages in 10/19/2018 her boss took the telephone off her hand and told Appellant **"You have Zero Claim."**

## ANALYSIS

**OCTOBER 19, 2018, CLAIM SHOULD HAVE BEEN PAID BY STATE FARM AS A MATTER OF POLICY AND A MATTER OF LAW. As a matter of Policy**, according to **ADSB 5** of **10/25/2022, ADSB 6** of **11/1/2022,** and **ADSB 7** of **11/11/2022,** the **OCTOBER 19, 2018, CLAIM** should have been paid.

Appellant included **SEVENTEEN Exhibits** from **A** to **Q**.

**Exhibit A** is the **OCTOBER 19, 2018, CONDEMNATION of Property** by **CODE ENFORCEMENT OFFICER**, KEN FLEMING.

This **CONDEMNATION of Property** was the result of an **"Electric SHOCK"** when you immerse a finger in the **Sink** full of water and grease and the **Exposed wiring** of a **ceiling lamp**.

To prevent the **Electric SHOCK** and the **Exposed wiring,** both electricity and water had to be turned off. **Both are the basic cause of harm**. So, the **Electricity Supply Line** was **cut off** and **Water** was **turned off.**

**Regardless** of why and how, these are **building issues**. The **owner** is **responsible** for his **building**. The **owner** must have these **building** issues fixed.

These Issues constitute a **Catastrophe**. This **Catastrophe** was insured if it happens, and it did happen. Now that **responsibility** of the **Owner** has **passed** to the **insurer**.

**The owner bought Security from State Farm. State Farm must perform duties under Security.**

4

**The Question that could be raised: Did the Owner buy that Security from the Merchant?  The Appellant says "Yes."**

**Application of ADSB 6** of **11/1/2022.**

1. Whatever allegations or conditions or claims, the **Electric Supply Line is part of the building structure.  It was damaged.  It is covered under "COVERAGE A" by the Insurance Policy according to Section I, Dwelling Extension as a utility line is one of "other structures." (Exhibit B: Dwelling Extension…Utility line.)**

To **connect** the Supply Line, you must **rewire** the house.  How reasonable is it to rewire the whole house?

Using common sense, there were two compelling reasons for this demand by the Fire Department and Code Enforcement: Exposure to wire splicing was seen in two different places. An Illegal connection of a light fixture with open wiring in the living room installed by the Tenant.  And an Illegal spliced bare hot wire laid on a plate under the sink with metallic painting equipment next to it,  in the kitchen in the dishwasher compartment, set by someone.

The second bare wire on a plate in the Dishwasher Compartment was the cause of the Electric Shock felt by the Fireman.  When the water with grease overflowed to reach these wires, electricity was conducted to the water in the sink causing a shock.

To understand this **deadly act** of **Splicing bare wires** on a **plate:**

These wires each had a wire cap wrapped with electric tape, and both wires were wrapped up with an electric tape like a bulb.  To splice these wires, you need to take off the electric tape holding both together and then removing the electric tape around each wire and then removing the wire caps on top of each wire.  Of course, the circuit breaker should be off for this wire. And if the Circuit Breaker is off these two wires will not be harmful.  What does this mean? Someone turned off the circuit breaker for the Dishwasher, spliced the wires bare, put them on a plate and curled them up because they are too long.  Then turn the Circuit Breaker on for this wire to make them live hot wires.  Deadly!!  Someone did it.  **Someone was evil.**

The Fire Department, the Code Enforcement, and Georgia Power are **right in demanding full wiring of the house**.

A **second inspection** of the wiring showed another spliced wire found in the laundry room under the kitchen caused by removing the light fixture.  This led the City of Forest Park to confirm, **"Illegal splices**, exposed wiring throughout" in **Exhibit D** in **ADSB 6** of 11/1/2022.  So, the demand to rewire the house is not **"Ordinance."  It is absolute safety.**

These harmful **"Illegal Splices"** could not be due to **"wear and tear."**  The living room light was installed by the Tenant.  The spliced bare wires were noticed first by the Code Enforcement Officer, and the Fire Department and then showed to the Appellant.  These wires on a Plate are the work of a person (**Exhibit D** and **Exhibit E** in **ADSB 6**, and **Exhibit P** and **Exhibit Q** in **ADSB 7**).

5

In **Exhibit D of November 2, 2018,** the term **"Illegal"** means <u>someone</u> committed a crime against the Law. Appellant could not be the **"someone".** The Appellant rented the Property to a Tenant with Six children. The Tenant rented a portion of the Property to Four more adult tenants of her own illegally. The Appellant knows for sure the tenant lady downstairs was a Plumber who knows more details about plumbing and electricity in relation to plumbing. In addition, she was the person in the living room who stated "$1000/month is too high for this property" and when Appellant complained to Tenant, possibly, " the Plumber sat on the toilet and twisted her body and dislocated the holding screw of the tank to cause a leak," in confidence, and when this Plumber repeated that to Appellant, the latter feels the Plumber might had caused the problems or both Tenant and Plumber conspired to do it. The Plumber knew how to do it. That is what her job taught her. Just a suspect.

<u>Whoever did it, it was not the Appellant.</u> How could the Tenant avoid **"Electrocution"** when she placed her metallic painting equipment next to this infamous **"Plate with two hot bare wires on it?"** She had the Property from September 17, 2018, through October 16, 2018, without getting a "shock"? Why did she get a shock on October 19, 2018, all conditions the same? Perhaps to avoid the rent or to harm the Appellant. **( ADSB 7 Exhibit P)**

**As far as Appellant is concerned,** the spliced wiring was done by someone other than Appellant, which is the reason why Appellant called it **"Vandalism" (harmful act by someone else).** Sabrina Atkins told Appellant since "You did not see it, and there is no witness to it, then Appellant could not call it "Vandalism." Legally, Appellant could not say Tenant committed Vandalism. But the Tenant had the home under her own supervision and protection and use. Notice that Sabrina Atkins wanted not to use "vandalism" on the October 19, 2018, but she uses it freely in the November 20, 2018, vandalism. Yet, the Appellant did not see it and Appellant did not have a witness to it. But she called it vandalism and so did State Farm.

As far as adjudication of vandalism in the insurance claims, when proof without a shadow of doubt is not possible without damning evidence, "vandalism" is ascertained by "reasonableness". November 20, 2018, damages are obviously an act of destruction: it is easy to see. October 19, 2018, damages are not easy to see. But these damages are reasonable.

The damages of **October 19, 2018,** were not done by Appellant. <u>It leaves Tenant or someone else permitted to be there to have done it.</u> **<u>The procedure described above is deadly</u>**.

( Was this Lowe (Tenant) in communication with the Lowe (evicted) before who used to turn the small Dishwasher Faucet below the sink to flood the area and say there is a leak? Both are Lowe and the target area is the same although elevated to splicing wires bare under the Sink.

How about the disgruntled Goodman, the Plumber. Tenant and Plumber are Goodman, too. Did she, do it?

When Appellant was directed by Tenant to look at the Clogged Sink, he found it full of grease and water. He bought two bottles of Liquid Drano and gave it to Tenant. There was no electric

6

shock.  According to <u>Sabrina Atkins, the sink drained</u>. **Sabrina Atkins lied to the Court.**
Obviously, she did not understand the procedure above.

  But look at the sink on October 19, 2018.  The sink was full of water and grease on top and
obviously overflowed below causing an electric shock, water touching the open bare wires on
the plate.

Sabrina Atkins told Appellant that he could not say "Tenant was pouring grease in the sink."
Appellant did not see the pouring.  Yes.  Appellant did not see Tenant pouring grease in the
sink.  But the sink was full of grease as the Fire Department and Code Enforcement and the
Appellant saw it on **October 19, 2018.** ( **ADSB 7, Exhibit Q of 10/22/2018)**)

Also, Sabrina Atkins told the Court in the hearing of **January 4, 2022,** on **October 19, 2018,**
there was no water in the sink.  **She lied to the Court in Open court.  This attorney is a Quack.**

2. On **October 22, 2018**, Appellant filed **Dispossessory** in Magistrate Court of Clayton,
County, Georgia. Appellant cited "Malicious Destruction of Premises and Violation of
Ordinance and Misuse"  **(ADSB 6, Exhibit C)**
Tenant filed a **Counter Claim** alleging Constructive Eviction:  The Property has been in
disrepair.  She had an Invoice for over $10,000.  She was represented by an attorney.

Consequently**, Appellant called State Farm to provide him with an attorney to defend
him against Liability to Tenant as stipulated by the Insurance Policy.  State Farm
refused to assign an attorney to defend Appellant against Liability.  (ADSB 6, Exhibit C:
Section II-Liability Coverages, Coverage L, 1 and 2.) Also (Exhibit P** Lines 4-5, 11-14.**)**

In the January 4, 2022, **Sabrina Atkins told the Court Appellant had to request that in writing
pending approval**. Yet there is no stipulation in the Policy to that effect. **Another Lie to the
Court in Open Court.**

On **November 12, 2018**, Magistrate Court of Clayton County, Georgia held a hearing on the
Dispossessory, Claim and Counterclaim.  After a lengthy trial, **a real fair trial**, the Court
dismissed the Claim and Counterclaim.  He ordered Dispossessory by November 20, 2018, if
Defendant did not file an appeal.  And Appellant did not file an appeal.

**State Farm remained silent. Appellant was no longer liable to Tenant**.

3. On **11/16/2018**, Appellant visited his Property.  Tenant and a male companion were
sitting on the porch with the door open.  He called the Police.  The Police recorded
Tenant will be leaving by 11/17/2018.  So, Appellant appeared on 11/20/2018 to find
the Property suffered great damage.

**ADSB 6, Exhibit M** shows an interest in the Open **Circuit Breaker** to damage it.  It just has some
bearing on the interest in electrical malice.  That shows all over the house. **ADSB 27 : Exhibits
8,10,11,30.**

7

Appellant called State Farm to report this damage.  State Farm grudgingly sent Ken Simmons to investigate.  **Sabrina Atkins said, "Yet he reported another one."**  Simmons took pictures and measurements.  He later issued two checks to cover damages noticed on November 20, 2018.  These checks were returned to State Farm.  These payments ignored the serious damages of October 19, 2018.   They were returned.

Appellant submitted two separate **estimates** to fix the property.  One (**Majestic,** 12/11/2018) was for $14,200 to correct the issues of October 19, 2018, and the second one (**Frugal Home Repairs**, 12/27/2018) for $39,0950 to correct the issues of October 19, 2018, and November 20, 2018.    Both were rejected by State Farm.

After the checks were returned, State Farm sent two different crews to inspect the damage.

Now one damage is sitting on another damage and the objective of the crews is to ascertain whether payments for November 20, 2018, damages are correct, ignoring the electrical damage of October 19, 2018.

 "Doing the same thing the same way and expecting to get different results" is fruitless.  Meanwhile Appellant has a $200,000 home in limbo, under the elements, not insured and not fixed.

State Farm wanted the Appellant to fix it and then fight it in Court.  Why have insurance?

Insurance is bought from the merchant for Security against Catastrophe.  The merchant makes the money.  But the merchant must protect the insured against catastrophe.  The Insured buys Security.  He does not make money.  The merchant does.

### LEGAL ACCOUNTING

Appellant submitted a list of documents called **APPELLENT'S DOCUMENTS IN SUPPORT OF BRIEF (ADSB).**

Using Document (**ADSB 6**), one can argue  the damages of **October 19, 2018,** should have been Covered by State Farm, the Appellee pursuant to the Insurance Policy issued to Appellant.

### I.    ELECTRIC SUPPLY LINE IS COVERED

Cutting the Supply Line by others is a destruction of Property according to the definition of  Property Damage.  Repairing the damage requires re-installation of a new wire.  To do so, electricity must be turned on.  Therefore, re-installation of a Supply Line means rewiring the property.

According to Page 2 of the  Policy in **Exhibit B:State Farm Policy,** "Structures connected to the Dwelling by only a fence, **utility line**, or similar connection are considered to be other structures" and are covered by the insurance under "**Dwelling Extensions**."   Therefore, the

**Electric Supply Line** which was "cut off" by Georgia Power at the request of the Fire Department and the Code Enforcement is a Dwelling Extension.  The Electric Supply Line is a "**utility line.**"  The Electric Supply Line was cut by others for whatever cause.  Therefore, the Electric Supply Line is **covered** by the Insurance Policy issued to Appellant by State Farm.

When State Farm repairs the damage, State Farm will be entitled to **Subrogation** of Damages if nothing else would impair it.

**************

## II.  STATE FARM FAILED TO APPOINT AN ATTORNEY IN LIABILITY: STATE FARM FORECLOSED ITS RIGHT TO ESTOPPEL AGAINST PLAINTIFF IN PRESUMPTIVE RECOVERY FROM TENANT AND LOST ITS ABILITY TO ENFORCE POLICY PROVISIONS

According to Page 9 of the **Policy, Section II-LIABILITY COVERAGES** in  **Exhibit B:State Farm Policy,** "If a claim made or a suit is brought against any insured for damages because of bodily injury, or property damage to which this coverage applies, caused by an occurrence, and which arises from the ownership, maintenance, or use of the insured premises, we will:

1)Pay up to our limit of liability for the damages for which the insured is legally liable; and 2) provide a defense at our expense by counsel of our choice,  we may make any investigation and settle any  claim or suit that we decide is appropriate.

According to Page 2 of the Policy in **Exhibit B: State Farm Policy,** "occurrence, when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. bodily injury;   b. property damage, or  c. personal injury during the policy period.

And repeated or continuous exposure to the same general conditions is considered to be one occurrence.

### This Policy provision was violated by State Farm:

When Appellant filed Dispossessory in Magistrate Court of Clayton County, Georgia on "Malicious Destruction of Property", Tenant filed a Counterclaim of over Ten Thousand Dollars blaming losses against Appellant by Constructive Eviction. **The Counterclaim is Liability against Appellant.**

When Appellant called State Farm to **appoint an attorney to defend him against Liability** to Tenant, **State Farm refused to do so.**   State Farm knew the LIABILITY COVERAGE to " provide a defense...by a counsel" in its Policy.  It turned out, State Farm wanted to use such denial of legal coverage to invoke a collateral estoppel against Appellant.  And it did.

State Farm knew it had to provide "defense and counsel" to protect Appellant against Liability to Tenant and intended to use such a denial to invoke Collateral Estoppel against Appellant in the DRSJ (Defendant Renewed Summary Judgment.)

9

**State Farm voluntarily relinquished known rights of Appellant with an intention to use such abandonment to invoke estoppel against Appellant in its DRSJ**. According to "Intelligent Digital Sys., LLC v. Beazley Ins. Co., 962 F. Supp. 2d 451, 459 (E.D.N.Y. 2013)" and "West Jersey Title **v.** Industrial Trust Co, 27N.J. 144, 152 (1958)" **State Farm waived its contractual provisions in the Policy. STATE FARM IS ESTOPPED TO ENFORCE POLICY PROVISIONS**.

**CONCLUSION:** In State Farm Policy, whenever Liability against Insured is invoked, State Farm assigns an attorney to defend the Insured (Obligation of State Farm to Insured.) That is a fact and State Farm knows it. So, when State Farm did not provide an attorney to defend the Appellant, State Farm relinquished its Obligation to Insured. More than that, State Farm wanted to relinquish its obligation so it would come back to Invoke Collateral Estoppel, that was the intent. State Farm knew of its Obligation, and it is in its Policy, and it intended to use such relinquishment of its Obligation to invoke Estoppel against Appellant. Accordingly, it committed a **WAIVER**. STATE FARM Waived its right to Estoppel. **WHEN STATE FARM RELINQUISHED RIGHTS OF PLAINTIFF TO DEFENSE ON LIABILITY WITH INTENTION TO INVOKE COLLATERAL ESTOPPEL, STATE FARM FORECLOSED ITS RIGHT TO ESTOPPEL AGAINST PLAINTIFF IN PRESUMPTIVE RECOVERY FROM TENANT AND LOST ITS ABILITY TO ENFORCE POLICY PROVISIONS**.

If an insurer improperly refuses to defend an underlying suit against its insured, the insurer will generally be estopped from relying on any policy defenses to avoid coverage and/or payment of any settlement or judgment that results. E.g., State Farm Fire & Cas. Co. v. Martin, 710 N.E.2d 1228, 1231 (Ill. 1999); Owens Illinois, Inc. v. United Ins. Co., 624 A.2d (N.J. App. Div. 1993), aff'd as to this issue, 650 A.2d 974 (1994).

**Therefore, all judgments against Appellant are NULL AND VOID**.

*********

## III.   POURING GREASE OVER WATER IN THE SINK WAS INTENTIONAL LEADING TO UNEXPECTED OUTCOME, CLOGGING THE SINK

The Supreme Court's ruling in *American Empire Surplus Lines Insurance Company v. Hathaway Development Company, Inc.* makes clear that **an occurrence can arise from intentional acts performed negligently provided unexpected damage results**.

For the Six children and Five adults, the Tenant's sixteen-year-old daughter fried chickens. The Sixteen-year-old was pouring the grease in the Sink to get rid of used cooking oil. That was her Intention. This took place systematically so that the Sink Clogged with Grease. Clogged Sink was an unexpected outcome. The **Hathaway Law** says that is an Occurrence and therefore, an "Accident."

Therefore, **CLOGGING THE SINK WAS AN ACCIDENT AND PLUMBING IS COVERED**.

## IV.   PLATE WITH TWO BARE SPLICED HOT WIRES CAREFULLY SITTING ON IT, IS SOMEONE'S ACT OF VANDALISM

**Exhibit N and Exhibit O** of **ADSB 6** are pictures of the same object from different angles. This object is the **"PLATE WITH TWO BARE SPLICED HOT WIRES CAREFULLY SITTING ON IT."** In **Exhibit N**, you can see the <u>metallic painting equipment that was used by the Tenant to paint the living room</u>. **Why was Tenant not electrocuted?**

In **Exhibit E,** of **ADSB 6,** this set up was shown to a Police Officer, now is a Sergeant, on June 10, 2021. When asked, "Is this a wear and tear?" His answer was "No. Someone did it."

In **Exhibit C** of **ADSB 6,** Appellant evicted Tenant on November 12, 2018, on "Malicious Destruction of Property" and the Court ruled after a **<u>Real</u>** Bench Trial "Tenant contributed to Water and Electric Damages" and dismissed her Counterclaim and gave her until November 20, 2018, to appeal. All based on October 19, 2018.
**Prior to October 19, 2018,** these wires should have been wrapped up with electric tape. Each terminal had a wire cap on top wrapped with an electric tape. Then both terminals were wrapped together with electric tape as one wire and placed in the back of the Dishwasher Compartment. To connect it to a Dishwasher, hard wiring (terminal to terminal), you need to remove the tapes and the wire caps. And then connect the respective terminals to have energy in the Dishwasher to operate. This involves back and forth transactions between the wires and the Circuit Breaker. Bare wires are a deadly act, next to attempted murder.

**On October 19, 2018,** these wires were unwrapped and bare sitting on a plate. <u>**The wires were too long,**</u> the reason why you can see <u>**they were curled up to sit on the plate**</u> as in **<u>Exhibit O.</u>**          ( *Neat service like delivering the severed head of a competitor to the Jewish Queen during the rise of Jesus the Son of Mary!)*

**On October 19, 2018,** the **Forest Park Fire Department,** and **the Forest Park Code Enforcement** and then **Georgia Power** took notice of these exposed deadly wires and immortalized it in the **Report of Ken Fleming of October 22, 2018 (ADSB 7, Exhibit Q,)** the Code Enforcement Officer with whom Appellant had a great long relation for many years since Appellant bought the Property in an Auction sometime around 2005+/-.

**On October 19, 2018,** Ken Fleming showed Appellant the Wires on a Plate about 4:30 P.M. That was Fleming directed inspection for Appellant.

**On November 2, 2018,** an Electrical Inspection Report of the City of Forest Park, Georgia confirmed an **Illegal Splices , Exposed Wiring.** That did not exist before.

Fleming watches over the properties like a hawk. He never received any complaints on that issue before.

**Prior to October 19, 2018,** Appellant did not receive any complaint from anyone that such deadly arrangement existed under the Sink. There were no complaints of Electric Shock even on October 18, 2018. The Tenant entered the Property on September 17, 2018. If these dangerous conditions existed before October 19, 2018, why Tenant/others not get electrocuted when placing the Tenant's metallic painting equipment next to the plate with exposed hot wires? Tenants had a motive to lower the rent and if possible, to live for free.

**************

V.      **PUTTING Part III and Part IV above together RESULT in ELECTRIC SHOCK.**

**THE ELECTRIC SHOCK IS AN ACT OF VANDALISM.** If IV was not true, then it would have been an **ACCIDENT** according to Hathaway and is **COVERED** by the Insurance Policy as an **Accident.** But **IV** is **TRUE.** Then the **Electric Shock** was **VANDALISM.**

The **Tenant** or **her Co-Conspirators, knowingly** or **unknowingly , caused** the **"Electric Shock"** to force Appellant to perform according to her or their wishes. Unfortunately, to her or them, they **failed** to do so.

On research about the **background** of Tenant, Appellant found she has been doing this with others to get money and has been **failing** all the time. She has been using public assistance to do her bidding.

**************

VI.     **STATE FARM CANNOT CLAIM COLATERAL ESTOPPEL**

**When State Farm denied Appellant the appointment of an attorney to defend him against Liability to Tenant per Part II above and used such denial to invoke Collateral Estoppel against Appellant, State Farm WAIVED its Policy rights to enforce its Provisions. Instead of helping the Insured, they attempted to harm the Insured.** Intelligent Digital Sys., LLC v. Beazley Ins. Co., 962 F. Supp. 2d 451, 459 (E.D.N.Y. 2013).

When State Farm invoked its Collateral Estoppel against Appellant, State Farm did it illegally. The party seeking the benefit of estoppel must not only have been free from fraud but must have acted in good faith and reasonable diligence; otherwise, no equity will arise in that party's favor. **Tybrisa Co. v. Tybeeland, Inc., 220 Ga. 442, 139 S.E.2d 302 (1964)** (decided under former Code 1933, § 38-116); **Travelodge Corp. v. Carwen Realty Co., 223 Ga. 821, 158 S.E.2d 378 (1967)**. At least State Farm

committed Fraud in formulating and executing the Affidavit of Ken Simmons. **State Farm committed Perjury, Forgery, Identity Theft, Falsehoods in Affidavit of Ken Simmons and Concealment by not releasing full discovery facts and documents.**

*If an insurer improperly refuses to defend an underlying suit against its insured, the insurer will generally be estopped from relying on any policy defenses to avoid coverage and/or payment of any settlement or judgment that results. State Farm Fire & Cas. Co. v. Martin, 710 N.E.2d 1228, 1231 (Ill. 1999)*

**Fortunately for the Insured**, he was able to defeat the Tenant and destroy her Claim of Liability against him. The prejudicial act of preventing defense of Appellant by STATE FARM was not FRUITIOUS to STATE FARM to destroy claims of Appellant against STATE FARM by WAIVING OBLIGATIONS TO DEFEND APPELLANT according to Policy Provisions in "Section II. LIABILITY COVERAGE." **They WAIVED it, they lost their insurance provisions.**

**SINCE DRMSJ USED COLLATERAL ESTOPPEL TO RENDER THIS LAWSUIT TRIVIAL, STATE FARM LOST ALL ITS BIDDINGS. STATE FARM IS LIABLE TO APPELLANT. INVOICE WILL BE SUBMITTED TO THE COURT AFTER ITS RULING.**

********************

## VII.    STATE FARM CANNOT CLAIM LOSS OF SUBROGATION RIGHTS: STATE FARM ACTED IN BAD FAITH AND WAIVED ITS OBLIGATIONS

According to Part I, Subrogation would be the only way State Farm can get back any money after restoring the electricity and water in the Property.

According to Part II, STATE FARM lost its ability to enforce Policy Provisions. More than that, STATE FARM was praying Appellant would not win against the Liability Claim against him. That prayer was not answered. But that **PRAYER DEMONSTRATES BAD FAITH.**

Now STATE FARM says since Magistrate Judge dismissed your claim without prejudice and since you did not appeal the dismissal, then you have no claim and STATE FARM lost its ability to collect from Tenant as the dismissal of a claim against Tenant was finalized by not appealing dismissal without prejudice. **State Farm's Policy requires that the Insured must do everything to make sure that State Farm does not lose a claim. "Everything"** is wild. It is a non-sensical term; it is not enforceable because it is **undefined.**

STATE FARM IS <u>ESTOPPED WHEN IT DID NOT ACT SWIFTLY TO APPEAL JUDGMENT AGAINST PLAINTIFF</u> . It knew not appealing dismissal of Magistrate Court would serve both to dismiss damage claim of October 19, 2023, and prevent State Farm to enforce Subrogation Rights to collect from Tenant. There is no such thing as Perfect Crime. State Farm has WAIVED its right to invoke Policy Provisions when it failed to represent Appellant against Liability and when State Farm acted silently until both Tenant and Appellant abandoned appealing their dismissal to

invoke Collateral Estoppel which was invoked illegally as State Farm Waived its right when it failed to represent Appellant with Intent to invoke Collateral Estoppel. (**Act + Intention = Waiver**)

STATE FARM is wrong again. And the WAIVER incurred by STATE FARM is applicable to this non-appealing Dismissal. How? A) Appealing dismissal is double-edged sword, it invites a losing party (Tenant) to be activated as a Party with a Claim against Appellant as if she did not lose in Lower Court, B) Appellant would be fighting against a "dead beet", defendant would not respond and lose to Appellant but Tenant has no money to pay and there is no prospect to have money to pay or defendant would respond and elongate litigation with no hope for Appellant to have any fruits, C) Appealing Dismissal Nuevo is actually starting a new Lawsuit where Appellant has to pay filing fee, except Appellant does not have to look for Service; Appellant would incur more direct cost with no hope to collect. Meanwhile STATE FARM would be sitting comfortably watching Appellant struggle without hope of gain. In other words, an Appeal is a Liability Claim in this case. When Liability against Appellant is covered by the Insurance Policy and since STATE FARM refused to provide legal help against Liability, this is a baiting to Appellant knowing that **Appellant would be losing ANY WAY**. This is called **BAD FAITH**.

**BAD FAITH DEPRIVES STATE FARM ABILITY TO ENFORCE POLICY PROVISIONS AND FORCE IT TO PAY PENALTY.**

In " **Rawlings v. Apodaca, 151 Ariz. 149, 158-61 (1986).** The Court reasoned that tort remedies, including compensatory damages for emotional distress and punitive damages, should be available in the insurance setting because "in buying insurance an insured usually does not seek to realize a commercial advantage but, instead, seeks protection and security from economic catastrophe." Thus, "one of the benefits that flow from the insurance contract is the insured's expectation that his insurance company will not wrongfully deprive him of the very security for which he bargained or expose him to the catastrophe from which he sought protection." In such "special, partly noncommercial relationships," where the insurance covers the insured's liability to another, "the insured surrenders to the insurer the right to control and manage the defense of claims made against him"; where the insurance covers the insured's own personal losses, "the insurer sets the conditions for both presentment and payment of claims." "In both … situations the contract and the nature of the relationship effectively give the insurer an almost adjudicatory responsibility." The Supreme Court also reasoned that in such settings, "contract damages not only fail to provide adequate compensation but also fail to provide a substantial deterrence against breach by the party who derives a commercial benefit from the relationship."

**State farm is increasing Appellant's catastrophe.** The claim has become long term litigation. An insured should know all the laws and their extensions and intensions to be insured by State Farm. The insured should be an insurance litigator not a common person. Added Burdens. With State Farm, an insurance claim has become a Declaration of War. With all its War Material and well-trained commanders, State Farm has become like a leper. People should

14

avoid it. There is no good faith. The insurance policy does not deter such a behavior. The insured must show Tort. Even, in this case, Tort involving Identity theft, perjury, Forgery committed by State Farm in this case was bypassed. They mean nothing in District Court. So what? They can commit the crime and get paid. God Bless.

**********************

VIII. **STATE FARM ACTED IN BAD FAITH IN ITS UNDISPUTED FACTS OF SIMMONS' AFFIDAVIT WHEN IT WAS DISPUTED AS IN ADSB 28 AND IN VIOLATING O.C.G.A. 13-6-5 (2010) BY MAKING ILLEGAL DEMANDS, IT INVOKED COLLATERAL ESTOPPEL WHEN IT HAD NO RIGHT TO IT BECAUSE IT WAIVED APPELLANT'S RIGHTS TO GET DEFENSE AGAINST LIABILITY,WHEN IT WAITED UNTIL BOTH APPELLANT AND TENANT LOST THEIR APPEAL TO DECLARE COLLATERAL ESTOPPEL.**
**State Farm acted in a hostile scheme to deprive Appellant of the Security he purchased.**

**Abdur-Rahim Dib Dudar, Appellant, Pro Se      Date October 27, 2023.**

**Confirmation of Service to Appellee**

Appellee will have its copy of this Brief posted when the Court posts it on PACER. This will not prejudice Appellee's right to timely notification and answer.

Abdur-Rahim Dib Dudar, Appellant, Pro Se                    Date October 27, 2023

**UNDISPUTED FACTS ARE DISPUTED IN AFFIDAVIT OF KEN SIMMONS**

**STATE FARM RENEWED MOTION FOR SUMMARY JUDGMENT SHOULD HAVE BEEN DENIED:**

> **Affidavit of Representative of State Farm, Ken Simmons, is riddled with lies verified by available documents:**
>
> **(The number immediately after the statement is the number of the declaration in Ken Simmons' Affidavit for the Defendant's Renewed Motion for Summary Judgment)**

1. *"The claims notes are a record of State Farm's handling of and investigation into Plaintiff's claims."*(3)  **These notes and records were not made available to Appellant as Discovery of the File was blocked by Swift & Currie and then by the Court.**

When an insurer refuses to hand in the file on the issues of coverage, the insurer loses the ability to enforce Policy Provisions.

2. *"I certify the following Exhibits A-L, attached hereto, are true and accurate reproductions of copies of the original record/report."*(4)  **This declaration is False.**
At least **EXHIBIT L** is False.   The statement is a conjunction where all statements (exhibits) must be true for it to be true.  Since at least one statement (**EXHIBIT L**) is False, the conjunction is False.

Not only **EXHIBIT L** is just false, but it is also **The Crime of Forgery, Identity Theft, Theft by Taking, and Perjury.**

**EXHIBIT L is a fraud, forgery, identity theft, conversion.**  It was included in the declarations of motions as of 2020 and regarded as false, a lie and then a crime.

3. *"State Farm issued a policy of insurance to Plaintiff"*(5) **This statement is indeterminate.**
State Farm submitted at least three kinds of policies to Appellant when  it was requested.  But granted Swift & Currie gave the Court

1

and Appellant a combined document and Appellant accepted that as a Policy in Court.

4. *"On or about **October 19, 2018**, Plaintiff notifies State Farm of a loss that occurred at the property, **indicating a date of loss of October 15, 2018**. Plaintiff described the loss as a leak from the kitchen sink resulting in water coming into contact with bare wires under the sink, which caused an electrical shock."* (13)    **That is a lie**.

**On October 15, 2018**, there was no electrical shock.
On **October 15, 2018**, Simmons visited the property at Plaintiff's request to see what the Tenant might have in mind. This made him react "I come to file a claim not to inspect." Plaintiff told him "I am not filing a claim." (**ADSB 13**: 14:17-25; 15:1-4,20-25;16:1-7,8-19; 17:1-10,11-19,20-25 ; 18:4-7,1421.
**PE** 69; **PE** 14: 11-6249-X65, 11-6249-P74; **PE** 1: 11-6249-X65; 11-6249-P74 (Water))   ( **"Plaintiff's Exhibits** in **ADSB 13"** is **PE**)

**On October 19, 2018,** Electrical shock occurred, documented by Code Enforcer, Ken Fleming in his Condemnation of Habitation Report. **(PE 6)**

5. *"On or about October 20, 2018, Plaintiff notified State Farm of a second loss, indication a date of loss of October 19, 2018, relating to a dislodged toilet in the lower-level bathroom."* (14 )    **That is a lie**.

**October 20, 2018, was Saturday**. **Non-Working Day**. He could not have come to visit with Appellant.
Moreover, **October 19, 2018,** was the infamous day of the Condemnation of Property (**PE** 6)

On **October 15, 2018**, Plaintiff showed Ken Simmons how a dislodged toilet caused a leak. Plaintiff had fixed the dislodged toilet and showed that to Ken Simmons. Plaintiff told him he was not filing a claim. (**Documentation in #4 above**)

The **Notice of No Habitation** was issued on **October 19, 2018**.

**October 22, 2018**, was **Monday** when Appellant filed his **Dispossessory** in Magistrate Court of Clayton County.

6. *"Composite Exhibit B"* (17 ) **It does not show the true damages; merely trash left by tenant**. **Concealment**. (**PE** 8-12, 24-64,66**.**)

7. *"I requested (from Appellant to) ...submit an estimate if discrepancies were found"* (19) **Appellant submitted estimates,** one for the (**October 19, 2018, damage**) and a second for both damages (**October 19, 2018**, and **November 20, 2018,** damages) and both were rejected by State Farm.

8. *"Plaintiff returned the payments to State Farm on December 20, 2018"* (22) **This is True**.

9. *"On January 8, 2018, ...Bryan Van Camp performed a second inspection of the property"*(23 ) **This  is True.**
It is **Camp** who told Appellant in person **"Slight Electric shock does not mean change all the wiring in the house.  We do not cover the code regulation."**   He failed to see the **Utility Line** cut off which is covered by the Policy.  And he **failed** to say that he looked under the Sink to see the **Bare, Spliced Wires on a Plate (PE** 10**,PE** 12**).**  And he **did not blame the damage on "Disrepair; Wear, Tear"** in person to Appellant.

10. *"Plaintiff returned checks saying, "Basis is Vandalism*." (27) **True.**
At that time Appellant had Zero Knowledge of the Law.

11. *"No letter from Chavis made these comments cited."*(29) **But Cerah Ceesay** wrote she asked for **Police Report** for **October 19,2018** to re-evaluate the claim.  And Ken Simmons did not authorize that nor would accept anyone to speak about **his Claim.**
(**ADSB 13,** 97:7-24; 98:1-3,10-25;99:1-5 (splicing),11-12 (Police Report).  Also, (**PE** 6, 15) (Police Report).

3

(Too many cooks spoils the broth.)

**12.** . *"Ms. Ross determined that the plumbing and electrical issues were not caused by intentional acts but, rather, were a result of wear and tear and the Property's poor condition."* (30) **This is a lie.**

**Robbie Ross** performed a third inspection, **April 2, 2018**.  She told Plaintiff **"Tell us** all you know because **we are here to help you**."

When Appellant called her and she was to tell Appellant about the **electrical issues**, her boss took the telephone off her hands and told Appellant, **"You got a Zero Claim**."

No written report was given to the Appellant and Appellant was denied **Discovery of All Documents**.

13. July 5, 2019 " *Notably, State Farm never received a copy of the alleged police report."*(33) **This is FALSE**.
Plaintiff mailed State Farm a copy of the Code Enforcement Report of Ken Fleming which tells of what happened including the Plumbing and Electrical Issues.   Ken Fleming operates under the Police Department of Forest Park. **(PE** 6,15.**)**

Ken Simmons expressed his obligations as he understands it:  He refused to accept any interference of any adjuster in his claim adjustment. **The request by Ceesay was objected to by Ken Simmons in his Deposition of June 11, 2021**. **(ADSB 13**, 97:7-24, 98:1-3,10-25,99:1-5 (splicing),11-12 (Police Report).  Also, **PE** 6, 15 (Police Report**).**
Yet he is the only authorized adjuster.  Power Play.
**The Insured becomes a victim a second time around.  More Catastrophe on top of Catastrophe.  Where are the guards??**

14. **"**Notice of non-renewal was based upon Four Claims "(34)
**When in actuality there was One Claim**.
According to the **Credit Bureau there were Two Claims**.  One Paid for about $9000 and a second not paid.

4

Plaintiff cashed no checks.  The **Georgia Insurance Commissioner** assigned an investigator.

**15.**    "*Following the filing of this lawsuit, Plaintiff contacted State Farm on December 4, 2020, and requested that State Farm reissue its previous check totaling $8,306.53.  State Farm sent a new check to Plaintiff on December 4, 2020, which has been cashed.  A true and correct copy of the cashed check issued by State Farm to Plaintiff is attached hereto as EXHIBIT L.*" (39)
**This statement is FALSE.  See Plaintiff's Combined Affidavit Part 1-Part 10.  The Perjury Trial will show how.**

**16.**    " *Declarations 40-44*"   **All contradict the evidence** and here is a Summary:  State Farm breached its policy; received several demands before filing a lawsuit; State Farm acted in bad faith and deception; Plaintiff protected the property very reasonably according to Georgia Law; Plaintiff provided State Farm with all documents available and requested.  Attorneys for State Farm along with State Farm acted with GREED and FRAUD to Deceive and Defraud Plaintiff to the Point where STATE FARM LOST ITS ABILITY TO ENFORCE POLICY PROVISIONS.

These statements were submitted by State Farm as "Undisputed Facts."

With the Affidavit of Ken Simmons riddled with lies, crimes, concealment, perjury,  State Farm should have never been granted a Renewed Motion for Summary Judgment.



**APPEAL NO. 23-12788-B**

---

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE ELEVENTH CIRCUIT

---

## ABDUR-RAHIM DIB DUDAR

### Plaintiff-Appellant,

### v.

## STATE FARM FIRE AND CASUALTY COMPANY,

### Defendant-Appellee.

---

**APPELLANT'S CERTIFICATE OF INTERESTED PARTIES**

**Dudar, Abdur-Rahim Dib, Appellant**

**Georgia Insurance Commissioner**

**Ray, William M. II, Honorable District Court Judge**

**State Farm Fire and Casualty Company, Appellee**

**Superior Court Judge, Gwinnett County Courts, Case # 19-C-07516-S4**

**U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

RECEIVED
CLERK
OCT 3 0 2023
ATLANTA, GA

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT (CIP)

Abdur-Rahim Dib Dudar _____ vs. State Farm _____ Appeal No. 23-12788-B

11th Cir. R. 26.1-1(a) requires the appellant or petitioner to file a Certificate of Interested Persons and Corporate Disclosure Statement (CIP) with this court within 14 days after the date the case or appeal is docketed in this court, and to include a CIP within every motion, petition, brief, answer, response, and reply filed. Also, all appellees, intervenors, respondents, and all other parties to the case or appeal must file a CIP within 28 days after the date the case or appeal is docketed in this court. You may use this form to fulfill these requirements. In alphabetical order, with one name per line, please list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party. *(Please type or print legibly)*:

Dudar, Abdur-Rahim Dib, Plaintiff

Georgia Insurance Commissioner

Ray, William M. II, Honorable US District Court Judge

Superior Court Judge, Gwinnett County Courts, Case # 19-C-07516-S4

State Farm Fire and Casualty Company

Signature: X _____
Name: Abdur-Rahim Dib Dudar          Prisoner # (if applicable): _____
Address: 2498 Warwick Circle, NE, Atlanta, GA 30345
Telephone #: 678-702-6455

Rev.: 2/23



**REFERENCED DOCUMENTS WITHIN BRIEF**

**APPELLENT'S DOCUMENTS IN SUPPORT OF BRIEF (ADSB)**

1. "Motion to Deny Appellee's Renewed Motion for Summary Judgment"

2. "MOTION TO STAY COURT ORDER AND JUDGMENT OF APRIL 12, 2022, AND SET THE CASE FOR A JURY TRIAL" <u>April 21, 2022</u>,

3. "MOTION TO STAY COURT ORDER AND JUDGMENT OF APRIL 12, 2022, AND SET THE CASE FOR A JURY TRIAL: NEW EVIDENCE NOT CONSIDERED BEFORE" May 18, 2022.

4. " COURT ORDER "   OCTOBER 13, 2022.

5. "RENEWED MOTION FOR NEW TRIAL NOT EXCLUDING A PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT" October 25, 2022.

6. ""RENEWED MOTION FOR NEW TRIAL NOT EXCLUDING A PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT" DOCUMENTATION" November 1, 2022

7. ""RENEWED MOTION FOR NEW TRIAL NOT EXCLUDING A PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT" DOCUMENTATION(Two documents added"" November 11, 2022

8. 1) "PLAINTIFF'S ANSWER TO DEFENDANT'S REQUEST FOR LEGAL PROVISIONS TO FILE "RENEWED MOTION FOR NEW TRIAL NOT EXCLUDING A PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT."

   2) "MOTION TO CHARGE KEN SIMMONS ON PERJURY CHARGES. November  10, 2022

9. "STATE FARM'S RESPONSE TO PALINTIFF'S PERJURY MOTIONS." on December 8, 2022.

10. "PLAINTIFF'S RESPONSE TO DEFENDANT'S "STATE FARM'S RESPONSE TO PLAINTIFF'S PERJURY MOTION" December 14, 2022

11. "MOTION: DEFENDANT, STATE FARM, AND DEFENSE ATTORNIES, SWIFT & CURRIE, VIOLATED PLAINTIFF'S CIVIL RIGHTS IN

CONSPIRACY TO SET KEN SIMMONS TO COMMIT PERJURY"    Date
December 14, 2022

12. "DOCUMENTATION FOR

1.MOTION TO CHARGE KEN SIMMONS ON PERJURY CHARGES

2.PLAINTIFF'S ANSWER TO DEFENDANT'S REQUEST FOR LEGAL
PROVISIONS TO FILE "RENEWED MOTION FOR NEW TRIAL NOT
EXCLUDING A PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT"

3.PLAINTIFF'S RESPONSE TO DEFENDANT'S "STATE FARM'S
RESPONSE TO  PLAINTIFF'S PERJURY MOTION"

4.MOTION: DEFENDANT, STATE FARM, AND DEFENSE ATTORNIES,
SWIFT  &  CURRIE, VIOLATED PLAINTIFF'S CIVIL RIGHTS IN
CONSPIRACY TO SET KEN SIMMONS TO COMMIT PERJURY

December 19, 2022

13.Deposition of Ken Simmons, June 15, 2021

14. " COURT ORDER"  denied Motion for New Trial, and Motion to
charge Ken Simmons with Perjury.    February 16, 2023

15."Motion for time extension pending a hearing on perjury
charges filed with the U.S. Attorney" pursuant to Rule 59
(a(1(B), 2;b) and Rule 60 (a, b(1,2,3,6),c(1),d)

16."Documentation for "Motion for time extension pending a
hearing on perjury charges filed with the U.S. Attorney"
pursuant to Rule 59 (a(1(B), 2;b) and Rule 60 (a,
b(1,2,3,6),c(1),d)"

17. "Letter to the US Attorney General " The Check included.   February
20, 2023.

18."Order Denying (116) MOTION FOR Extension of Time to File
Appeal." Signed by Judge William M. Ray, II on 4/24/2023. "

2

19. " MOTION TO STAY JUDGMENT PERMANENTLY FOR GOOD CAUSE PURSUANT TO RULE 60(b((1,2,3), c(3), d(3))

ANALYSIS OF STATEMENTS OF SWIFT & CURRIE FOR STATE FARM." May 15, 2023

20."STATE FARM'S RESPONSE TO PLAINTIFF'S MOTION FOR PERMANENT STAY." June 5, 2023

21. "SUPPLEMENT TO " MOTION TO STAY JUDGMENT PERMANENTLY FOR GOOD CAUSE PURSUANT TO RULE 60(b((1,2,3), c(3), d(3)), OTHERWISE GRANT MOTION FOR FINAL JUDGMENT SET IN PLAINTIFF'S CONCLUSION." June 11, 2023

22. "PLAINTIFF MOVES FOR SANCTIONS AGAINST STATE FARM AND SWIFT & CURRIE UNDER RULE 11. June 15, 2023

23.PLAINTIFF'S RESPONSE TO STATE FARM'S AND SWIFT & CURRIE'S " STATE FARM'S RESPONSE TO PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS" July 13, 2023

24.motion, Appellant invoked 18 U.S. Code § 1038 (b)
*"Whoever engages in any conduct with intent to convey false or misleading information under circumstances where such information may reasonably be believed and where such information indicates that an activity has taken, is taking, or will take place that would constitute a violation of chapter 2, 10, 11B, 39, 40, 44, 111."* Also, c(3) is applicable. July 13, 2023

25.*Section 1983* also is applicable because Swift & Currie are "semi-employees operating Under the Color". They knew and should have known. They are trusted by the Court as telling the truth. When they don't tell the truth they must endure the Sanctions.    July 13, 2023

26. "Court Order": the Court finally closed entry of all on-coming motions. With that in mind, a Notice of Appeal was filed almost immediately. August 11, 2023

27. Deposition of Ken Simmons of June 15, 2021

28. UNDISPUTED FACTS ARE DISPUTED IN AFFIDAVIT OF KEN SIMMONS

3